IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PERRY LEE WOODS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 2:12-CV-2768-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of** } | |
| **Social Security,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OF DECISION**

Perry Lee Woods ("Plaintiff") brings this action pursuant to Title II of Section 205(g) of the Social Security Act ("the Act"), seeking review of the decision of the Administrative Law Judge ("ALJ"), denying his claims for disability and Disability Insurance Benefits ("DIB"). 42 U.S.C. § 405(g). Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.      Proceedings Below**

Plaintiff protectively filed for a period of disability and DIB on March 18, 2008, alleging that he became disabled on May 1, 2006. (Tr. 219-20). The Social Security Administration ("SSA") denied Plaintiff's application on June 20, 2008. (Tr. 98-103). On June 30, 2008, Plaintiff filed a request for a hearing. (Tr. 104). Plaintiff's request was granted and a hearing was held before ALJ Kenneth Wilson on January 20, 2010. (Tr. 45-72, 115). In his decision, dated February 9, 2010, the ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. (Tr. 81-92). After the ALJ's unfavorable decision, Plaintiff sought review with the Appeals Council. The Appeals Council granted Plaintiff's request for review and remanded

the case for further proceedings. (Tr. 76-77). A supplemental hearing was held on January 28, 2011. (Tr. 27-44). On March 15, 2011, the ALJ again issued a decision finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. (Tr. 13-22). Plaintiff submitted a request for review of the supplemental hearing decision. (Tr. 8). The Appeals Council denied Plaintiff's request on July 25, 2012. (Tr. 1-4). As such, the Commissioner's decision is final and a proper subject of this court's judicial review. *See* 42 U.S.C. § 405 (g).

## II.     Statement of Facts

Plaintiff was born February 28, 1955. (Tr. 210). He has a twelfth grade education and earned a vocational diploma. (Tr. 34). Plaintiff alleges that his disability began on May 1, 2006. (Tr. 240). Plaintiff claims that an inability to sleep along with leg and shoulder pain render him unable to work, prevent him from standing for long periods of time, and from concentrating without "daz[ing] in and out." (*Id*.). The ALJ found, after reviewing the medical evidence, that Plaintiff had the severe impairments of arthritis and left should tendonitis. (Tr. 16, Finding No. 3). Additionally, the ALJ found that Plaintiff's apnea, anxiety, and hypertension were non-severe impairments. (Tr. 17).

Plaintiff worked as a brick mason at a hospital for 25 years, from 1977 until he retired February 2, 2002. (Tr. 240, 241). As a brick mason, Plaintiff layed ceramic tile and plaster, built and reconstructed parts of the hospital, was "always climbing," and frequently carried objects that weighed 50 pounds or more. (Tr. 241). Plaintiff also used tools and machines requiring technical knowledge in order to complete his functions as a brick mason. (*Id*.) According to Plaintiff, his jobs required him to stand for three hours per day, to kneel for two hours per day, and to handle big objects for two and one half hours per day. (*Id*.)

During his alleged period of disability, Plaintiff saw the following physicians: Drs. Stuart J. Padove, Randall L. Real, and Kevin Lasseigne. (Tr. 281, 300, 323). Plaintiff first saw Dr. Padove on September 20, 2006 for increasing difficulty with sleep at night. (Tr. 300). Dr. Padove found Plaintiff to have "minimal symptoms of depression [] more anxious than anything else." (Tr. 301). Additionally, Dr. Padove reported within his neurological findings that Plaintiff's was "Anxious." (*Id.*). Dr. Padove placed Plaintiff in the sleep center to evaluate for sleep apnea. (Tr. 301). During a sleep study conducted on October 5, 2006, Dr. Padove found that Plaintiff suffered from sleep apnea. (Tr. 299).

During two follow-up visits, January 18, 2007 and October 30, 2007, Dr. Padove noted that Plaintiff declined to use the prescribed bilevel because he could not afford the co-pay, but instead used 100 mg of Amitriptyline, which Plaintiff stated did not alleviate his problems. (Tr. 295, 296). Plaintiff also reported to Dr. Padove that he had borrowed a CPAP device from a friend but "was unable to use it and he therefore thinks that CPAP will not work for him." (Tr. 295).

Dr. Padove recommended that Plaintiff see Dr. Real, an Otolaryngologist, for a consultation regarding how to best alleviate his sleep apnea. (*Id.*). After a consultative exam on October 31, 2007, Dr. Real scheduled Plaintiff for the following surgical procedures in order to enlarge his airways: turbinate reduction, septoplasty, tonsillectomy, and adenoidectomy. (Tr. 283). At the same consultation, Dr. Real also reported that "[Plaintiff] claims to be in good general health and denies any major illness." (*Id.*). Surgery was performed on November 13, 2007 and, according to the November 16, 2007 post-op visit with Dr. Real, no complications were noted. (Tr. 281, 285).

At a January 17, 2008 follow-up with Dr. Padove, Plaintiff claimed as follows: the CPAP was ineffective; he still had a long sleep latency despite using the Amitriptyline; and the surgery was unsuccessful in resolving his sleep problems. (Tr. 294). In addition, Plaintiff reported that he no longer gasped and choked as he did before the surgery. (*Id*.). In the same visit, Dr. Padove noted that although Plaintiff did not "feel well rested," he did not "sleep in the daytime either." (*Id*.). On January 24, 2008, Plaintiff underwent another sleep study, from which Dr. Padove determined that Plaintiff's sleep apnea persisted despite surgery. (Tr. 354, 362-63). Due to the results from this sleep study, Dr. Padove recommended that Plaintiff begin taking 30 mg of Restoril while decreasing his Amitriptyline dosage to 75 mg, and that he use an auto-adjust CPAP machine. (Tr. 354).

At a May 6, 2008 follow-up visit with Dr. Padove, Plaintiff reported he was "using CPAP and sleeping much better…[and was] feeling better in the daytime as well." (Tr. 351). During the next five follow-up examinations, Dr. Padove noted that Plaintiff was continuing to use the CPAP to good effect. (Tr. 340-41, 342-43, 344-45, 347-48, 349-50). He further noted that Plaintiff had elevated blood pressure but was unwilling to take blood pressure medication. (Tr. 345). Additionally, Plaintiff's neurological findings revealed that he was "alert, grossly intact" at every follow-up visit from October 30, 2007 until March 17, 2009. (Tr. 294-96, 340-54).

During a June 6, 2009 follow-up visit with Dr. Padove, he noted that Plaintiff showed "some anxiety" during his neurological exam.[1] (Tr. 339). In Plaintiff's final follow-up visit on November 11, 2009, Dr. Padove reported that "[Plaintiff] still feels that he is benefitting from use of CPAP; it is just occasionally he has a bad night." (Tr. 336).

---

[1] Within the "Plan" section of Dr. Padove's follow-up visit notes (from Plaintiff's visit on June 6, 2009), Dr. Padove reported that Plaintiff was suffering from "severe anxiety." Dr. Padove did not explain why his examination of Plaintiff indicated "some" anxiety, but he later noted in the same visit note that Plaintiff had "severe" anxiety. (Tr. 339).

4

Plaintiff also visited the office of Dr. Kevin Lasseigne for a Consultative Examination on May 31, 2008. (Tr. 324-27). According to Dr. Lasseigne, Plaintiff stated that he "has difficulty falling asleep…that rarely once he is asleep that he wakes up…denies any daytime drowsiness or symptoms of narcolepsy…is not falling asleep during the day." (Tr. 324). Plaintiff also told Dr. Lasseigne that he had some bilateral shoulder pain when lifting things over his head; some left hip pain, primarily when going from a seated position to standing; and some pain when lying on his left side. (Tr. 325). Dr. Lasseigne observed that Plaintiff was able to get on and off the exam table with ease and that he was able to walk the hall and the exam room. (*Id*.). Dr. Lasseigne finally found that Plaintiff had mild pain due to a palpitation of the lumbar paraspinal musculature. (Tr. 327).

Toward the end of Plaintiff's hearing, the ALJ posed a hypothetical question to Vocational Expert ("VE") Claude Peacock. (Tr. 38). The ALJ asked the VE questions based on a Residual Functional Capacity (RFC) Assessment by Disability Examiner Audrey Finch dated November 13, 2008. (Tr. 328-335). Plaintiff's RFC indicates his ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ asked if a hypothetical individual with Plaintiff's RFC would be able to perform Plaintiff's past relevant work. The VE responded that he could not. (Tr. 39). The ALJ then asked if the same individual would be able to perform other jobs in the national market, and the VE suggested that such a person could perform light, unskilled work – such as that of a line assembler, packer, or part sorter – and that work is available in significant numbers in both the state and national markets. (Tr. 40). The ALJ then posed a second hypothetical question, asking whether an individual, with the same RFC as in the first hypothetical but who also experienced mild to moderate pain and was only able to perform physical activities for up to seven hours due to fatigue, would be able to maintain competitive

employment. (Tr. 40). The VE responded that such an individual would not be able to do so, as it would be necessary to perform a full eight hour workday to maintain competitive full-time employment. (*Id.*).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ found that there exists a significant quantity of jobs in the national economy that Plaintiff could perform, in conformance with the Medical-Vocational Guidelines provided at 20 C.F.R. § 404, Subpart P, Appendix 2, and Plaintiff is therefore not disabled. (Tr. 22).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ

must first determine the claimant's RFC. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his onset date of disability and has a combination of the severe impairments of arthritis and left shoulder tendonitis. (Tr. 16). The ALJ also found status post septoplasty, turbinate reduction, adenoidectomy, hypertension, and obstructive sleep apnea to be non-severe impairments and determined that there was insufficient medical evidence to support a finding that Plaintiff suffered from the impairment of anxiety. (Tr. 16-17). With regard to the third prong of the analysis, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 17-18).

The ALJ found that all of Plaintiff's impairments, individually or in combination, are insufficient to qualify him for disability. (*Id.*). The ALJ listed at least four bases for that decision. First, Plaintiff only alleged impairment in one peripheral joint in the upper extremity, whereas 20

7

C.F.R. § 404, Subpart P, Appendix 1, listing 1.02 requires impairment in a peripheral joint of both upper extremities. (Tr. 18). Additionally, the ALJ found that there was no medical evidence of "any gross anatomical deformity or appropriate medical signs of joint space narrowing, bony destruction or ankylosis," as is required to meet listing 1.02. (*Id.*). Second, Plaintiff's obstructive sleep apnea did not cause him to suffer "from a disabling impairment" based on the medical evidence provided for the period from the onset date of May 1, 2006 through his date last insured of September 30, 2008. (Tr. 17). Third, Plaintiff has not alleged any "ongoing or continuous restrictions due to [his] status post septoplasty, turbinate reduction, tonsillectomy, and adenoidectomy;" and "these conditions constitute at most only a slight abnormality that cannot reasonably be expected to produce more than minimal, if any, work-related limitations. (Tr. 17-18). Finally, there is no medical evidence of an anxiety disorder for Plaintiff until September 30, 2008, which is after the date last insured. (Tr. 17).

The ALJ made these determinations regarding Plaintiff's impairments despite Dr. Padove stating that Plaintiff "is disabled" in his medical opinion dated February 16, 2011. (Tr. 389). The ALJ gave little weight to Dr. Padove's opinion for three reasons. The ALJ concluded that: (1) Dr. Padove's opinion is inconsistent with Dr. Padove's own contemporaneous findings and notes; (2) the opinion conflicts with other objective evidence on the record from Dr. Lasseigne; and (3) according to 20 C.F.R. § 404.1527(e), whether or not Plaintiff is disabled is a question "that is reserved to the Commissioner of Social Security."[2] (Tr. 20).

---

[2] The court notes that Dr. Padove did not assess functional limitations from Plaintiff's sleep apnea, but rather summarily opined that Plaintiff was disabled. (Tr. 389, 391). Opinions on some issues, such as whether Plaintiff is disabled and Plaintiff's RFC "are not medical opinions, . . . but are, instead, opinion on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see* SSR 96-5p, 1996 WL 374183; *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986).

In the final steps of the analysis, the ALJ found that Plaintiff is unable to perform his past relevant work as a brick mason and maintenance worker. (Tr. 21). However, based on the testimony of the VE, the ALJ determined that, taking into account Plaintiff's age, education, work experience, and RFC, Plaintiff is "capable of making a successful adjustment to other work that exist[s] in significant numbers in the national economy" and found Plaintiff not disabled. (Tr. 22).

### III.  Plaintiff's Arguments for Reversal

Plaintiff presents two arguments for reversal: (1) the ALJ erroneously classified him as "an individual closely approaching advanced age" pursuant to grids found at 20 C.F.R. 404, Subpt. P, App. 1, and (2) the ALJ erroneously did not give enough weight to Dr. Padove's opinion as his treating physician. (Pl.'s Mem. 5).

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied the proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

### A. The ALJ Did Not Err in Classifying Plaintiff as "An Individual Closely Approaching Advanced Age."

Plaintiff argues that the ALJ erroneously classified him under 20 C.F.R. § 404.1563 as an individual "closely approaching advanced age" instead of an individual of "advanced age." (Pl.'s Mem. 5). Plaintiff's argument rests on the fact that he turned 55 years old on February 18, 2010, and therefore believes he qualifies as being an individual of "advanced age." (Pl.'s Mem. 5).

Based on 20 C.F.R. § 404.1563(b), the ALJ must use age categories that apply during the period for which a claimant determines he is disabled. A claimant's "age at the time of the decision governs" the age category applied to him. *Crook v. Barnhart*, 244 F. Supp. 2d 1281, 1284 (N.D. Ala. 2003); *citing Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In *Crook*, there was an issue of deciding which of the following to use in

determining the claimant's age: the date of the decision, the date of the hearing, or the date of the onset of the disability. *Id*. In *Crook*, the date of the decision was within the period for determining disability. *Id*. Here, however, the date of decision was not before the date last insured, which is the last day of the determining period. It follows therefore that *Crook* is distinguishable and utilizing Plaintiff's age at the time of decision here would be in direct contravention of the explicit language of the statute (although that was not the case in *Crook*). In other words, the fact that Plaintiff was 55 years of age at the time the ALJ issued his decision is irrelevant because a showing that a claimant became impaired after the expiration of his insured status is insufficient to establish eligibility for DIB. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979). Therefore, the court concludes the ALJ used the correct legal standard and correctly characterized Plaintiff as a 53 year old.

The court is fully aware that the categories for age should not be mechanically applied. *Chester v. Heckler*, 610 F. Supp. 533, 534-535 (S.D. Fla. 1985). However, this general rule is limited to borderline cases, and the rule has been interpreted to affect cases where the individual was within six months of the next category. *Crook*, 244 F. Supp. 2d at 1284 (*citing* 20 C.F.R. § 404.1563; *also citing* Appeals Council Interpretation II-5-302 (Mar. 16, 1979)). As Plaintiff was 53 at the date last insured, and the minimum age for an individual characterized as being "advanced age" is 55, Plaintiff was more than twelve months from reaching the minimum age for "advanced age" status. 20 C.F.R. § 404.1563(e). Therefore, the ALJ used the proper legal standard in characterizing Plaintiff as "an individual closely approaching advanced age."

    **B.**    **The ALJ Did Not Err by Giving Little Weight to Dr. Padove's Opinion.**

Plaintiff's second argument is that the ALJ failed to give adequate weight to the opinion of Dr. Padove, his treating physician, that he is disabled. (Pl.'s Mem. 12). Under the "treating

physician rule," a treating physician's opinion is entitled to substantial weight and the ALJ must articulate good reasons if he discredits the opinion of a treating physician. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). If the treating physician's opinion is unsupported by objective medical evidence or is inconsistent with the record as a whole, then the ALJ has good reason to discount the opinion of the treating physician. *See* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159-60 (2004). The ALJ determined that "Dr. Padove's opinion is inconsistent with his own contemporaneous findings and notes, as well as other objective evidence within the record." (Tr. 20). In determining Plaintiff's obstructive sleep apnea to be non-severe, the ALJ relied on Plaintiff's statement to Dr. Padove that he was able to sleep for eight to nine hours without waking. (Tr. 17). In addition, the ALJ quoted Dr. Padove noting that Plaintiff was satisfied with his sleep regimen. (*Id.*). The ALJ also discussed Plaintiff's September 11, 2008 and October 14, 2008 visits with Dr. Padove, in which Plaintiff reported that his myalgias and anthralgias had improved due to his use of prescribed muscle relaxers and his taking water aerobics classes. (Tr. 19).

The ALJ also relied heavily on the records of Dr. Lasseigne in discounting Dr. Padove's opinion. During Plaintiff's visit with Dr. Lasseigne, Plaintiff stated that he engaged in a wide array of activities without assistance. (Tr. 19). This was consistent with Plaintiff's testimony during the January 20, 2010 hearing, in which Plaintiff testified that he was able to lift up to forty pounds, go to church, do water aerobics, cook his own meals, make his bed, and do his laundry. (Tr. 61-66). Plaintiff also reported only mild pain to Dr. Lasseigne. (*Id.*). There was good cause for the ALJ to give minimal weight to the treating physician's opinion when it is inconsistent

with other medical evidence and with the claimant's description of his daily activities. *Fries v. Comm'r of Soc. Sec. Admin.*, 196 Fed. Appx. 827, 833 (11th Cir. 2006).

Finally, there was good cause for the ALJ to rely on the opinion of consultative examiners when their findings are consistent with other evidence in the record. *Id*. The daily activities that Plaintiff testified to performing, Dr. Padove's in-visit observations, and Dr. Lasseigne's consultative examination notes are sufficient to serve as good cause for discounting Dr. Padove's medical opinion. Also, as Dr. Padove's in-visit records were consistent with Dr. Lasseigne's, good cause exists for the ALJ to rely on Dr. Lasseigne's opinion. Therefore, the ALJ used the proper legal standard in determining to discount Dr. Padove's opinion, and had substantial evidence in the record to support giving little weight to the opinion of Dr. Padove.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination. The ALJ's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on November 22, 2013.

 _____
 **R. DAVID PROCTOR**
 UNITED STATES DISTRICT JUDGE